IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARIAH BARNETT | ) | CASE NO. |
| 720 Adams Street | ) | |
| Fairborn, Ohio, 45324 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| MIDWEST FIRST STAR, INC. | ) | **JURY DEMAND ENDORSED** |
| 720 Adams Street | ) | **HEREIN** |
| Fairborn, Ohio, 45324 | ) | |
| | ) | |
| **Serve also:** | ) | |
| c/o Farooq Shah, Statutory Agent | ) | |
| 1850 Tossing Mane Court | ) | |
| Centerville, Ohio, 45458 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| RONELL JONES | ) | |
| 5875 Renee Ct, Unit 8 | ) | |
| Cincinnati, Ohio, 45239 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| FAROOQ SHAH | ) | |
| 1850 Tossing Mane Court | ) | |
| Centerville, Ohio, 45458 | ) | |
| | ) | |
| Defendants | ) | |

Plaintiff, Mariah Barnett, by and through undersigned counsel, as her Complaint against

Defendants, states and avers the following:

**PARTIES.**

1.    Barnett is a resident of Greene County, Ohio.

2.    Midwest First Star, Inc. ("Midwest") is an Ohio Limited Liability Corporation that owns and

operates "Hardees" fast food restaurants throughout Ohio, Indiana, and Kentucky, to include

the "Hardees" restaurant located at 7508 Brandt Pike in Huber Heights, Ohio. ("Huber Heights Hardees").

3.    Shah is a resident of Montgomery County, Ohio and is owner, president, and or CEO of Midwest.

4.    Jones is a resident of Hamilton County, Ohio and at all times referenced herein, was the District Manager for the district in which the Huber Heights Hardees was located.

## PERSONAL JURISDICTION.

5.    Midwest is an Ohio limited liability company; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio.

6.    Shah and Jones are residents of Ohio; contract with companies in Ohio, and own or rent property in Ohio.

7.    As such, the exercise of personal jurisdiction over Defendants comports with due process.

8.    This cause of action arose from or relates to events that occurred in this district, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION.

9.    This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C §§ 215, 216, and 26 U.S.C § 7434.

10.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Barnett's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA"), Ohio R.C. § 4113.15, and Ohio R.C. § 4112.02(A) because those claims derive from a common nucleus of operative facts.

11.   Venue is proper in this District because Midwest resides in this District (28 U.S. Code § 1391(b)(1).

## FLSA COVERAGE.

12. At all times referenced herein, Midwest formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

13. At all times referenced herein, Barnett was an "employee" of Midwest within the meaning of 29 U.S.C. § 203(e) and R.C. § 4111.03(D)(3).

14. At all times referenced herein, Midwest was Barnett's employer within the meaning of 29 U.S.C. § 203(d) and R.C. § 4111.03(D)(2).

15. At all times referenced herein, Shah was an "employer" within the meaning of 29 U.S.C. § 203(d) and R.C. § 4111.03(D)(2).

16. At all times referenced herein, Jones was an "employer" within the meaning of 29 U.S.C. § 203(d) and R.C. § 4111.03(D)(2).

## ADMINISTRATIVE PROCESS.

19. Within two years of the adverse employment actions described herein, Barnett filed Charges of Discrimination with the Ohio Civil Rights Commission ("OCRC") against Midwest Charge No. 22A-2024-00639C and Jones (Charge No. 22A-2024-00637C) alleging (1) Midwest had subjected her to a hostile work environment due to sexual harassment and (2)

Midwest and Jones had retaliated against her for reporting and opposing the sexual harassment.

20. On or about January 11, 2024, the OCRC issued and mailed Notice of Right to Sue letters to Barnett for Midwest and Jones.

21. Barnett has filed this Complaint on or before the two-year deadline set forth in the Notice of Right to Sue letter.

22. Barnett has properly exhausted all administrative remedies against Midwest and Jones pursuant to Ohio R.C. § 4112.052(B)(1)(b)(i).

## FACTUAL ALLEGATIONS.

17. Barnett is a former employee of Midwest.

18. Barnett was hired by Midwest in or around May of 2022 as a Shift Lead for the Huber Heights Restaurant.

19. At all times referenced herein, Barnett was paid on an hourly basis.

20. At all times referenced herein, Barnett was directly supervised by Tonya (last name unknown, A.K.A. "Libby"), the General Manager of the Huber Heights Hardees.

21. In early August, 2022, the Assistant General Manager of the Huber Heights store, Austin (last name unknown) asked Barnett to go on a date with him.

22. Barnett politely declined Austin's invitation to go on a date with him and told him that she was seeing someone and was not interested in him.

23. Austin was angered by Barnett's rejection, and subsequently, began to sexually harass her.

24. Shortly after Barnett rejected him, Austin began making unwanted, sexual remarks to Barnett.

25. Austin regularly made inappropriate remarks to Barnett such as that she was "sexy"; that he loved her "wide hips"; and that he loved "how fat your ass is."

4

26. Austin often told Barnett that her "wide hips" meant that she "was built for fucking" and "built for making babies."

27. On one occasion, Austin told Barnett that "you are the kind of girl who gets pregnant if you fuck even once without a condom."

28. In addition to making inappropriate sexual remarks, Austin regularly grabbed, touched and/or rubbed his body or hands against Barnett's hips, butt, and breasts without her consent or permission.

29. Barnett was shocked and offended by Austin's sexual remarks and unwelcome touching and repeatedly told Austin to stop.

30. Austin would apologize but often excused his behavior, stating he could not "control" it due to his attraction to Barnette.

31. Despite her complaints, Austin continued to sexually harass Barnett.

32. In early September, 2022, Barnett complained to Tonya about Austin's ongoing sexual harassment ("First Sexual Harassment Complaint").

33. Tanya told Barnett that she would tell Jone and find out "how this should be handled."

34. Austin continued to engage in sexually harassing behavior towards Barnett after she made the First Sexual Harassment Complaint.

35. Subsequently, after no action appeared to have been taken in response to Barnett's First Sexual Harassment Complaint, Barnett contacted Jones directly by text message.

36. On or about September 6, 2022, Barnett sent Jones a text message in which she complained about Austin's sexually harassing behavior; that she did not feel safe working with him; and that she wanted to be transferred to a different Hardee's location in order to escape Austin's sexual harassment ("Second Sexual Harassment Complaint").

37. Barnett further stated in her Second Sexual Harassment complaint that she would resign or "file a lawsuit" if action was not taken to protect her from Austin's sexual harassment.

38. A true and accurate copy of the Second Sexual Harassment Complaint is provided below as **Exhibit A**:



39. As evidenced by **Exhibit A**, Jones received Barnett's Second Sexual Harassment Complaint but ignored it.

40. As evidenced by **Exhibit A**, Jones next message to Barnett concerned only her arriving at work on the morning of September 8, 2022.

41. Barnett had called off from work on September 8, 2022.

42. Prior to calling off, Barnett notified Tonya that she would not be at work due to not feeling well.

43. Barnett had become ill with physical manifestations of her anxiety on the evening of September 7, 2022 about Austin's sexual harassment and Midwest and Jone's anticipated reaction to her complaints of sexual harassment.

44. Barnett's anxiety manifested as severe heart burn; rapid thoughts; nausea and vomiting; and an inability to rest or sleep.

45. Barnett eventually was able to fall asleep in the very early morning hours of September 8, 2024.

46. Barnett was still asleep when Jones texted her about her "eta" for reporting to work.

47. Because Barnett had notified Tonya she would be absent and because Jones had not contacted her again, Barnett assumed that Jones had become aware that she called off, and did not respond to him when she woke up early in the afternoon of September 8, 2022.

48. Jones did not contact Barnett again prior to terminating her by text message later that day, as seen in the 8:24pm text message contained in **Exhibit A**.

49. Defendants did not initially provide Barnett with a reason for her termination.

50. Prior to her termination, Barnett had never been absent from work and had never been disciplined for any reason.

51. Subsequent to Jones' termination, her mother sent Jones a text message explaining emphatically that "Mariah has had a nervous break down with everything u all [sic] have been having her deal with."

52. Jones did not respond to Barnett's mother's text message.

53. On September 9, 2022, Barnett sent Jones another text message asking to speak with Midwest's Human Resources department so she could complain that she had been terminated in retaliation for reporting sexual harassment.

54. Jones responded to Barnett by falsely claiming "this is the first I am hearing about a sexual harassment complaint" and that "to my knowledge, you resigned with a job abandonment because of unknown reasons."

55. As evidenced by **Exhibit A**, Barnett had made the Second Sexual Harassment Complaint to Jones on September 7, 2022.

56. Barnett had not resigned, and she had not abandoned her position.

57. Barnett responded to Jone's false claim that he was unaware of her Second Sexual Harassment Complaint by telling him she still had the September 7, 2022 text messages in which she made the complaint, and then forwarding screenshots of the same to Jones.

58. Confronted with irrefutable evidence that he was lying to Barnett, Jones did not respond to Barnett.

59. Jones never provide Barnett with the contact information for Midwest's Human Resources person/department.

60. Jones never followed up on Barnett's Second Sexual Harassment Complaint.

61. Subsequently, Barnett returned her uniforms to Midwest.

62. Barnett did not return any keys because she was never given any keys.

63. Jones was present when Barnett returned her uniforms to Midwest.

64. When Jones saw Barnett approaching with the uniforms, he hid from her so as to avoid further discussing her complaints about sexual harassment and retaliation.

65. Subsequently, Barnett complained to Shah by text message that she had been fired in retaliation for complaining about sexual harassment and further, that Jone's threat to withhold $200.00 from her final paycheck was "against the law."

66. Shah did not respond to Barnett's text message.

67. On or about September 14, 2022, Barnett received her final paycheck.

68. Prior to her First Sexual Harassment Complaint and Second Sexual Harassment Complaint, Midwest paid Barnett $14.00 per hour.

69. When Barnett worked during the pay period that fell under the September 14, 2022 pay date (August 23, 2022 through September 5, 2022), she expected to be paid $14.00 for all hours worked under forty (40) in a workweek.

70. Barnett's final paycheck was paid at the minimum wage rate of $9.30 per hour, and not at the $14.00 per hour rate that Barnett had been promised.

71. Barnett's gross pay on her final paycheck would have been $331.36.

72. Instead of paying Barnett a gross total of $331.36, Defendants stole her pay from her in yet another act of retaliation, resulting in a payment of $0:

| PERSONAL AND CHECK INFORMATION | | EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|---|---|
| Mariah Barnett | | | | Regular | | | | 99.98 | 879.82 |
| 3 Lindway Dr | | | | Hourly | 42.93 | 9.3000 | 399.25 | 374.59 | 5042.38 |
| Fairborn, OH 45324 | | | | Overtime | | | —— | 5.05 | 106.05 |
| Soc Sec #: xxx-xx-xxxx Employee ID: 12053 | | | | Total Hours | 42.93 | | —— | 479.62 | |
| Home Department: 150 Store Staff Direct Labor | | | | Gross Earnings | | | 399.25 | | 6028.25 |
| | | | | Total Hrs Worked | 42.93 | | | | |
| Pay Period: 08/23/22 to 09/05/22 | | WITHHOLDINGS | | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Check Date: 09/14/22 Check #: 2548 | | | | | | | | | |
| NET PAY ALLOCATIONS | | | | Social Security | | | 24.75 | | 373.75 |
| | | | | Medicare | | | 5.79 | | 87.41 |
| DESCRIPTION | THIS PERIOD ($) | YTD ($) | | Fed Income Tax | S 0 | | 23.19 | | 470.56 |
| Check Amount | 0.00 | 1463.08 | | OH Income Tax | 0 | | 3.18 | | 90.44 |
| Chkg 589 | 0.00 | 3058.05 | | OH FRCSD Inc | 0 | | 2.00 | | 30.15 |
| NET PAY | 0.00 | 4521.13 | | OH HUHGT Inc | | | 8.98 | | 123.45 |
| | | | | TOTAL | | | 67.89 | | 1175.76 |
| | | DEDUCTION | | DESCRIPTION | | | THIS PERIOD ($) | | YTD ($) |
| | | | | >> SHORTFALL(S) ARE INDICATED BY AN ASTERISK(*) < | | | | | |
| | | | | One Time Deduct | | | *331.36 | | 331.36 |
| | | | | TOTAL | | | 331.36 | | 331.36 |

73. Subsequently, Barnett complained to Shah by text message that "I want to know why my pay got dropped to 930 [sic] an hour and on top of that I never received the rest of my money and I never got paid today and my paycheck stub shows you guys took my money."

74. Shah did not respond to Barnett's text message.

75. Defendants withholding of Barnett's final pay was an act of blatant theft.

76. Defendants had received Barnett's uniforms, and even if the had not, the uniforms were not worth $336.36.

77. Defendants did not incur $336.36 expenses in replacing any uniform(s) that had been issued to Barnett.

78. Barnett was never given any keys to return, and even if she had, it would not have cost $336.36 (or more) to replace a key, or even the locks on the Huber Heights Hardees.

79. Defendants did not incur $336.36 or more in expenses replacing any keys or locks directly because of Barnett.

80. There was no reason for Defendant to withhold Barnett's final paycheck other than to punish her and retaliate against her for making protected complaints about sexual harassment.

81. In January of 2023, Midwest issued an IRS form W2 to Barnett ("2023 W2").

82. Barnett's 2023 W2 showed that she had earned $6,028.25 from Midwest during her employment.

83. In reality, Barnett earned $331.36 less than $6,028.25 because of Midwest's unlawful theft of her wages.

84. Based on the above text messages, Shah and Midwest knew that Barnett was paid less than $6,028.25 but reported this amount to the IRS as one final act of retribution.

85. As a result of Defendants' wrongdoing, Barnett has suffered and continues to suffer harm.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT – FAILURE TO PAY MINIMUM WAGE.
### (Asserted Against All Defendants).

86. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

87. At all times referenced herein, Barnett was a non-exempt, hourly employee of Midwest.

88. As a non-exempt, hourly employee, Barnett was entitled to be paid at least the minimum wage for all hours worked.

89. Defendants intentionally and purposefully failed to pay Barnett at least minimum wage – or any wage - for any of the 42.93 hours she worked between August 23, 2022 and September 5, 2022.

90. Midwest and Shah's failure to pay Barnett was motivated by retaliation, and thus was intentional, willful, and/or reckless.

91. In violating the FLSA, Midwest and Shah acted without good faith or a reasonable basis for committing said violations, as no reasonable employer could believe that it is lawful to fail and refuse to pay an employee at all for their work.

92. As a direct and proximate result of Midwest's conduct, pursuant to 29 U.S.C. § 216(b), Midwest and Shah are liable to Barnett for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages, as well as costs and reasonable attorney fees.

## **COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT.**
### **(Asserted Against All Defendants).**

93. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. The Ohio Minimum Fair Wages Standards Act ("OMFWSA") requires that covered employees be compensated at least the minimum wage for every hour worked in a workweek. See O.R.C. §§ 4111.01, et seq.

95. Defendants intentionally and purposefully failed to pay Barnett at least minimum wage – or any wage- for any of the 42.93 hours she worked between August 23, 2022 and September 5, 2022.

96. Having violated the OMFWSA, Midwest and Shah are liable to Barnett pursuant to O.R.C. § 4111.10 for the full amount of her unpaid minimum wages; liquidated damages; and for Washington's costs and reasonable attorneys' fees.

## **COUNT III: VIOLATION OF THE OHIO PROMPT PAY ACT.**
### **(Asserted Against Midwest Only).**

97. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. During all times material to this complaint, Midwest was covered by the Ohio Prompt Payment Act, R.C. § 4113.15 ("OPPA") and Barnett was employed by Midwest within the meaning of the OPPA.

99. The OPPA requires that Midwest pay Barnett all wages, including unpaid minimum wages, on or before the first day of each month, for wages earned by Barnett during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of the month, for wages earned by Barnett during the last half of the preceding calendar month. See O.R.C. § 4113.15(A).

100. At the conclusion of her term of employment with Midwest, Barnett was not paid wages, within 30 days of performing the work, after she requested said payment. See O.R.C.§ 4113.15(B).

101. There is no dispute that Barnett earned wages during the pay period running from August 23, 2022 and September 5, 2022.

102. There is no dispute that Midwest has not paid Barnett the wages she earned between August 23, 2022 and September 5, 2022.

103. Barnett's unpaid wages remain unpaid for more than thirty (30) days beyond her regularly scheduled payday.

104. As a result of Midwest conduct, Barnett has suffered and continues to suffer damages.

105. Barnett is entitled to her unpaid wages and either $200.00 or six (6) percent interest on her unpaid wages.

## COUNT IV: SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.
### (Asserted Against Midwest Only).

106. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. During her employment with Midwest, Barnett was subjected to offensive and harassing conduct by Austin based on her gender.

108. The unwelcomed sexual harassment against Barnett was sufficiently severe or pervasive to affect the terms, conditions or privileges of Barnett's employment.

109. The unwelcomed sexual harassment had the purpose and/or effect of unreasonably interfering with Barnett's job duties and created an intimidating, hostile, and offensive working environment. See 29 C.F.R. §1604.11(a)(3).

110. Midwest knew or should have known of the sexually harassing conduct against Barnett.

111. Midwest condoned, tolerated and ratified the sexually harassing conduct against Barnett.

112. The sexually harassing conduct against Barnett was offensive and abusive to her.

113. The offensive and sexually harassing conduct of Austin created a hostile and/or abusive work environment for the reasonable person similarly-situated to Barnett.

114. As a result of the conduct of Austin, all of which is imputable to Midwest, Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

115. Midwest acted with malice or reckless indifference to the rights of Barnett when they condoned, tolerated, ratified and subjected her to the sexually harassing conduct by Austin, thereby entitling Barnett to an award of punitive damages.

116. To remedy the violation of Barnett's rights secured by 42 U.S.C.A § 2000e-2, Barnett requests that the Court award her the relief prayed for below.

### COUNT V: SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT IN VIOLATION OF OHIO R.C. § 4112.02(A). (Asserted Against Midwest Only).

117. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. During her employment with Midwest, Barnett was subjected to offensive and harassing conduct by Austin based on her gender.

119. The unwelcomed sexual harassment against Barnett was sufficiently severe or pervasive to affect the terms, conditions or privileges of Barnett's employment.

120. The unwelcomed sexual harassment had the purpose and/or effect of unreasonably interfering with Barnett's job duties and created an intimidating, hostile, and offensive working environment.

121. Midwest knew or should have known of the sexually harassing conduct against Barnett.

122. Midwest condoned, tolerated and ratified the sexually harassing conduct against Barnett.

123. The sexually harassing conduct against Barnett was offensive and abusive to her.

124. The offensive and sexually harassing conduct of Austin created a hostile and/or abusive work environment for the reasonable person similarly-situated to Barnett.

125. As a result of the conduct of Austin, all of which is imputable to Midwest, Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

126. Midwest acted with malice or reckless indifference to the rights of Barnett when they condoned, tolerated, ratified and subjected her to the sexually harassing conduct by Austin, thereby entitling Barnett to an award of punitive damages.

127. To remedy the violation of Barnett's rights secured by Ohio R.C. 4112.02(A), Barnett requests that the Court award her the relief prayed for below.

## COUNT VI: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964. (Asserted Against Midwest Only).

128. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Midwest treated Barnett differently than similarly situated employees based on her gender.

130. Midwest violated 42 U.S.C.A § 2000e-2 when it discriminated against Barnett based on her gender by terminating her for the stated reason of her failure to report to work on September 8, 2022, while simultaneously not terminating male employees for similar or even worse conduct.

131. For example, Midwest did not terminate Austin when Barnett complained that he was sexually harassing her.

132. As a result of Midwest's discrimination against Barnett in violation of 42 U.S.C.A § 2000e-2, Barnett has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Barnett to injunctive, equitable, and compensatory monetary relief.

133. As a result of Midwest's discrimination against Barnett in violation of 42 U.S.C.A § 2000e-2, Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

134. In its discriminatory actions as alleged above, Midwest has acted with malice or reckless indifference to the rights of Barnett, thereby entitling Barnett to an award of punitive damages.

135. To remedy the violations of the rights of Barnett secured by 42 U.S.C.A § 2000e-2, Barnett requests that the Court award her the relief prayed for below.

## COUNT VII: GENDER DISCRIMINATION IN VIOLATION OF OHIO R.C. § 4112.02(A).
## (Asserted Against Midwest Only).

136. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

137. Midwest treated Barnett differently than similarly situated employees based on her gender.

138. Midwest violated Ohio R.C. § 4112.02(A) when it discriminated against Barnett based on her gender by terminating her for the stated reason of her failure to report to work on September 8, 2022, while simultaneously not terminating male employees for similar or even worse conduct.

139. For example, Midwest did not terminate Austin when Barnett complained that he was sexually harassing her.

140. As a result of Midwest's discrimination against Barnett in violation of Ohio R.C. § 4112.02(A), Barnett has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Barnett to injunctive, equitable, and compensatory monetary relief.

141. As a result of Midwest's discrimination against Barnett in violation of Ohio R.C. § 4112.02(A), Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

142. In its discriminatory actions as alleged above, Midwest has acted with malice or reckless indifference to the rights of Barnett, thereby entitling Barnett to an award of punitive damages.

143. To remedy the violations of the rights of Barnett secured by Ohio R.C. § 4112.02(A), Barnett requests that the Court award her the relief prayed for below.

## COUNT VIII: UNLAWFUL RETALIATORY TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.
### (Asserted Against Midwest Only).

144.  Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

145.  Pursuant to 42 U.S.C.A § 2000e-3, it is an unlawful discriminatory practice "for an employer to discriminate against any of its employees...because they have opposed any practice made an unlawful employment practice by this subchapter, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

146.  Midwest terminated Barnett's employment because she reported Austin's sexual harassment.

147.  Midwest's retaliatory termination of Barnett violated 42 U.S.C.A § 2000e-3.

148.  As a result of Midwest's retaliatory discrimination against Barnett in violation of 42 U.S.C.A § 2000e-3, Barnett has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Barnett to injunctive, equitable, and compensatory monetary relief.

149.  As a result of Midwest's retaliatory discrimination against Barnett in violation of 42 U.S.C.A § 2000e-3, Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

150.  Midwest acted with malice or reckless indifference to the rights of Barnett when they retaliated against her, thereby entitling Barnett to an award of punitive damages.

151.  To remedy the violation of Barnett's rights secured by 42 U.S.C.A § 2000e-3, Barnett requests that the Court award her the relief prayed for below.

## COUNT IX: UNLAWFUL RETALIATORY TERMINATION IN VIOLATION OF OHIO R.C. § 4112.02(I).
### (Asserted Against Midwest And Jones Only).

152. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

153. Pursuant to Ohio R.C. § 4112.02(I), it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section."

154. Midwest terminated Barnett's employment because she reported Austin's sexual harassment.

155. Midwest's retaliatory termination of Barnett violated Ohio R.C. § 4112.02(I).

156. As a result of Midwest's retaliatory discrimination against Barnett in violation of Ohio R.C. § 4112.02(I), Barnett has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Barnett to injunctive, equitable, and compensatory monetary relief.

157. As a result of Midwest's retaliatory discrimination against Barnett in violation of Ohio R.C. § 4112.02(I), Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

158. Midwest acted with malice or reckless indifference to the rights of Barnett when they retaliated against her, thereby entitling Barnett to an award of punitive damages.

159. To remedy the violation of Barnett's rights secured by Ohio R.C. § 4112.02(I), Barnett requests that the Court award her the relief prayed for below.

## COUNT X: UNLAWFUL POST EMPLOYMENT RETALITION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.
### (Asserted Against Midwest Only).

160. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

161. Pursuant to 42 U.S.C.A § 2000e-3, it is an unlawful discriminatory practice "for an employer to discriminate against any of its employees...because they have opposed any practice made an unlawful employment practice by this subchapter, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

162. In *Nasrallah v. Lakefront Lines, Inc*., N.D.Ohio No. 1:17 CV 69, 2017 WL 2291657, Chief United States District Judge of the United States District Court for the Northern District of Ohio Patricia Gaughan held that adverse actions taken after the employment relationship ended that would dissuade a reasonable employee from making protected complaints are actionable as retaliation.

163. Subsequent to terminating Barnett's employment, Midwest further retaliated against Barnett by stealing her wage and keeping that money for itself.

164. The intentionality and malice behind Midwest's conduct is evidence by the undisputed fact that, even after Barnett complained to Shah, Jones, and other managers and/or officers of Midwest, no one responded to Barnett, and her stolen wages were never returned to her.

165. Midwest's retaliatory theft and conversion of Barnett's wages violated 42 U.S.C.A § 2000e-3.

166. As a result of Midwest's retaliatory discrimination against Barnett in violation of 42 U.S.C.A § 2000e-3, Barnett has been denied employment opportunities providing substantial compensation

and benefits, thereby entitling Barnett to injunctive, equitable, and compensatory monetary relief.

167. As a result of Midwest's retaliatory discrimination against Barnett in violation of 42 U.S.C.A § 2000e-3, Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

168. Midwest acted with malice or reckless indifference to the rights of Barnett when they retaliated against her, thereby entitling Barnett to an award of punitive damages.

169. To remedy the violation of Barnett's rights secured by 42 U.S.C.A § 2000e-3, Barnett requests that the Court award her the relief prayed for below.

## COUNT XI: UNLAWFUL POST EMPLOYMENT RETALITION IN VIOLATION OF OHIO R.C. § 4112.02(I). (Asserted Against All Defendants).

170. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

171. Pursuant to Ohio R.C. § 4112.02(I), it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section."

172. In *Nasrallah v. Lakefront Lines, Inc.*, N.D.Ohio No. 1:17 CV 69, 2017 WL 2291657, Chief United States District Judge of the United States District Court for the Northern District of Ohio Patricia Gaughan held that adverse actions taken after the employment relationship ended that would dissuade a reasonable employee from making protected complaints are actionable as retaliation.

173. Subsequent to terminating Barnett's employment, Midwest further retaliated against Barnett by stealing her wage and keeping that money for itself.

174. The intentionality and malice behind Midwest's conduct is evidence by the undisputed fact that, even after Barnett complained to Shah, Jones, and other managers and/or officers of Midwest, no one responded to Barnett, and her stolen wages were never returned to her.

175. Midwest's retaliatory theft and conversion of Barnett's wages violated Ohio R.C. § 4112.02(I).

176. As a result of Midwest's retaliatory discrimination against Barnett in violation of Ohio R.C. § 4112.02(I), Barnett has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Barnett to injunctive, equitable, and compensatory monetary relief.

177. As a result of Midwest's retaliatory discrimination against Barnett in violation of Ohio R.C. § 4112.02(I), Barnett has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

178. Midwest acted with malice or reckless indifference to the rights of Barnett when they retaliated against her, thereby entitling Barnett to an award of punitive damages.

179. To remedy the violation of Barnett's rights secured by Ohio R.C. § 4112.02(I), Barnett requests that the Court award her the relief prayed for below.

## COUNT XII: BREACH OF IMPLIED CONTRACT.
### (Asserted Against Midwest Only).

180. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

181. Midwest offered Barnett employment at an hourly rate of $14.00 per hour for her non-overtime hours.

182. Barnett accepted Midwest's offer.

183. Barnett's work for Midwest constituted acceptance of Midwest's offer of employment.

184. Barnett worked during the pay period of August 23, 2022 through September 5, 2022 in reliance of Midwest's promise of paying her $14.00 per hour.

185. While Midwest retained the right to change Barnett's rate of pay, it did not communicate its intent to do so to Barnett in advance of the payer period of August 23, 2022 through September 5, 2022, and Barnett never assented to this change in her rate of pay.

186. Midwest's failure to pay Barnett $14.00 per hour for the non-overtime hours she worked between August 23, 2022 and September 5, 2022 constitutes a breach of implied contract.

187. Barnett was not in breach of the contract at the time of Midwest's breach.

188. As a direct and proximate cause of Midwest' breach of its implied contract with Barnett, Barnett suffered and will continue to suffer damages.

## COUNT XIII: PROMISSORY ESTOPPEL
### (Asserted Against Midwest Only)

189. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

190. Midwest represented to Barnett that she would be paid $14.00 per hour for her non-overtime hours.

191. Barnett relied on Midwest's representations.

192. It was reasonable for Barnett to rely on Midwest's representations.

193. Barnett's reliance on Midwest's representations caused her to work for Midwest between August 23, 2022 and September 5, 2022.

194. Midwest did not compensate Barnett for the work she performed between August 23, 2022 and September 5, 2022.

195. Barnett's reliance on Midwest's representations was detrimental to Barnett.

196. As a direct and proximate cause of Midwest' breach of its promises to Barnett, Barnett suffered and will continue to suffer damages.

### COUNT II: UNJUST ENRICHMENT/QUANTUM MERUIT.
### (Asserted Against Midwest Only).

197. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

198. Barnett, in Working for Midwest between August 5, 2022 and September 5, 2022, conferred a benefit on Midwest.

199. Midwest was aware that Barnett worked, and further, how many hours she had worked.

200. Midwest benefited from Barnett's work.

201. It would be unjust to allow Midwest to retain the benefit provided by the Barnett's work without compensation to Barnett.

202. Barnett is entitled to either the value of her services, or the amount Midwest benefitted from the work she performed.

### COUNT XV: VIOLATION OF THE INTERNAL REVENUE CODE: WILLFUL FILING
### OF A FALSE INFORMATION RETURN.
### (Asserted Against Midwest Only).

203. Barnett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

204. Pursuant to the Internal Revenue Code, 26 U.S.C. § 7434, Midwest was responsible for submitting accurate wage statements for Barnett to the IRS.

205. During Barnett's employment with Midwest, she was paid a total of $5,696.89.

206. Midwest knowingly and intentionally stole Barnett's last paycheck in the net total of $331.36 in retaliation for her complaints about sexual harassment, and then falsely reported this "income" on Barnett's IRS Form W2.

207. Midwest falsely reported that Barnett had been paid a total of $6,028.25 when it knew that this was untrue.

208. Midwest intentionally and knowingly overreported Barnett's 2022 wages in retaliation for her complaints about sexual harassment.

209. Alternatively, Midwest recklessly overreported Barnett's 2022 wages in retaliation for her complaints about sexual harassment

210. Midwest knowingly failed to prevent and/or correct the fraudulent W-2 from being filed with the IRS, despite their duty to do so.

211. As a result of Midwest's actions, Barnett is entitled to the great of her actual damages (excess tax liability) or statutory liquidated damages in the amount of $5,000.00.

212. Pursuant to 26 U.S.C. § 7434(d), Barnett has submitted a copy of this Complaint to the IRS.

## **PRAYER FOR RELIEF.**

WHEREFORE, Barnett prays for judgment in her favor against Midwest containing the following relief:

(a) On Counts I and II, an award against all Defendants for Barnett's unpaid minimum wages, to include an additional equal amount as liquidated damages;

(b) An award against all Defendants of compensatory and monetary damages to compensate Barnett for lost wages, benefits bestowed on and unjustly retained by Midwest, as well as consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award against all Defendants of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Barnett for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries

(d)    An award against all Defendants of punitive damages in an amount to be proved at trial;

(e)    Against Midwest only, an award of statutory damages pursuant to Ohio R.C. § 4113.15 and 26 U.S.C. § 7434;

(f)    An award of reasonable attorney's fees, as well as the taxable costs of this action; and,

(g)    An award of such other relief as this Court may deem necessary and proper.

<div style="margin-left:40%">

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
25825 Science Park Drive, Suite 200
Beachwood, Ohio 44122
Phone: (216) 364-1330
Fax:    (216) 291-5744
Email:  Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiff Brian Barnett*

</div>

## JURY DEMAND

Plaintiff Mariah Barnett demand a trial by jury by the maximum number of jurors permitted.

<div style="margin-left:40%">

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**

</div>